### STATE v. MITCHELL.

1. Neither the constitutional provision that "the right of trial by jury shall remain inviolate," nor that the accused shall be entitled "to meet the witnesses against him face to face," has application to summary proceedings to punish for contempt.
2. That portion of section 13, c. 101, Laws 1890, which provides that "the affidavits upon which the attachment of contempt issues shall make a *prima facie* case for the state," is not unconstitutional, as being an encroachment of the legislative upon the judicial power.
3. Neither is such objection valid against the subsequent provision of the same section that "the defendant shall not be entitled to a discharge upon his denial of the facts stated in the moving papers," as it does not provide that he shall not be discharged, but leaves the whole matter with the court to be judicially determined.
4. Whether the law is unconstitutional, in that under it a defendant may be compelled to be a witness against himself, is not decided, for it is not claimed that defendant's rights were so violated, and it is a well-established rule of law that no one can take advantage of the unconstitutionality of any provision of a law who has no interest in, and is not affected by, such provision.
5. Motion to strike out certain evidence examined, and the ruling of the court sustained.

(Syllabus by the Court. Opinion filed Aug. 17, 1892.)

Appeal from circuit court, Lake county. Hon. F. R. AIKENS, Judge.

Proceeding to punish defendant for contempt in violating an injunction order of the court. Defendant adjudged guilty, and was punished by fine and imprisonment. Defendant appeals. Affirmed.

The facts are stated in the opinion.

*McMartin & Carland*, for appellant.

Chapter 101, Laws of 1890, is unconstitutional as a whole, for the reason that the title of the act and the act itself embraces two

distinct subjects, viz., prohibition and regulation. Section 21, art. 3, Constitution of South Dakota; Cooley, Const. Lim. 180; Antonia v. Gould, 34 Tex. 49; State v. McCracken, 42 Id. 383; State v. Morgan, 2 S. D. 32; People v. Galway, 61 Mich. 285; Town v. Sainer, 59 Iowa, 296; Miller v. Jones, 80 Ala. 89; Bronson v. Oberlin, 41 Ohio St. 478; In re Hauck, 38 N. W. 275; State v. Benett, 27 Kan. 213; In re Burris Co., 66 Mo. 442. In re Goode, 3 Mo. App. 226; Giddings v. City, 47 Tex. 548; Swickley v. Scholar, 118 Pa. St. 165; Railroad v. Geiger, 21 Fla. 669; Northwestern Man. Co. v. Wayne, 58 Mich. 693; Johnson v. Spicer, 107 N. Y. 185; Railroad v. Long, 27 Kan. 684; State v. Palmer, 23 Fla. 621; Thomas v. Collins, 58 Mich. 64; Stiefel v. Maryland, 61 Md. 144; Burgher v. Prescott, 23 Fed. 20.

The party aggrieved has the right to appeal from final orders in contempt proceedings. Section 5236, Comp. Laws; Witter v. Lyon, 34 Wis, 564; In re Day, 34 Id. 638; State v. Giles, 10 Wis. 101; Shannon v. State, 18 Id. 604.

*Robert Dollard, Attorney General*, for respondent.

This court has no power to review, on appeal, the proceedings for contempt in the lower court. Hays v. Fisher, 102 U. S. 121; *Ex parte* Kearney, 20 U. S., 7 Wheat. 38; New Orleans v. N. Y. Steamship, 20 Wall. 387; sections 5507, 5516, Comp. Laws; Eitenbecker v. District, 134 U. S. 30.

Chapter 101, Laws of 1890, is constitutional. State v. Judge, 1 L. R. A. 86; People v. Mahoney, 13 Mich. 494; State v. Judge, 2 Iowa, 280; Cooley, Const. Lim. 173; Trust Co. v. Beebe, 2 L. R. A. 418; Hare v. Kennedy, 83 Ala. 608; Burnside v. Lincoln, 86 Ky. 423; Syker v. People, 2 L. R. A. 461; People v. Loenthal, 93 Ill. 191; Magner v. People, 97 Ill. 320; Judson v. Bessemer, 4 L. R. A. 742; State v. Aulman, 76 Iowa, 624; State v. Donaldson, 42 N. W. 781; Board v. Blue, 21 N. E. 933; *Ex parte* Rohler, 74 Cal. 38; *Ex parte* Livingstone, 21 Pac. 322; Ramagmane v. Crook, 85 Ala. 226; Fahey v. State, 27 Tex. App. 146; Gibson v. Pullman, 42 Fed. 572; Macon v. Stamps, 11 S. E. 442; Millvale v. Railroad, 7 L. R. A. 369; Railroad v. Harrelson, 24 Pac. 465; Com. v. Sweitzer, 129 Pa. 644; *Id.* v. Bingham, 18 Atl. 570; Hroneck v. People, 24 N. E. 861; State v. Madison, 45 N. W. 856.

The punishments provided under the law are not cruel and unusual in the sense of the constitution. State v. Williams, 77. Mo. 310; *In re* Bayard, 25 Hun, 546; State v. Muers, 53 Me. 536; Comm. v. Hitchings, 5 Gray, 482.

KELLAM, P. J. This was a proceeding to punish the defend-· ant and appellant for contempt in violating an injunction order made in an action pending in the circuit court for the county of Lake, in which the state was plaintiff and appellant was defend-. ant. The action was instituted under chapter 101, Laws 1890, pro-· hibiting the sale of intoxicating liquors, and sought to restrain and vacate a place alleged to have been kept and used for the unlawful sale of intoxicating liquors by defendant, Mitchell. While such action was pending, and while an injunction order therein was in full force, commanding defendant to desist and refrain from selling, or offering to sell, or keeping for sale, barter, or trade, any intoxicating liquors, by himself, his agents or his servants, affidavits were presented to said court alleging violation by defendant of said injunction order, and by order of court an attachment was issued to the sheriff requiring him to bring the defendant into court, to show cause why he should not be punished for contempt. Upon the hearing the court found and adjudged the defendant to be in· contempt, and imposed punishment of fine and imprisonment there· for, from which action and judgment of the court the defendant appeals. The attorney general files a stipulation waiving irregulari-. ties in the manner of bringing up the questions of error for review in this court, and consenting that all questions raised in the record be duly considered and determined. While we understand that such consent could not confer a jurisdiction which we did not otherwise possess, yet as the authorities are in confusion on the question of the right to appeal in contempt proceedings, and as to what questions may be reviewed, and as it is urged by both sides that it is important that this court express an early opinion· upon some of the questions presented, we conclude that it is our duty to examine and decide such questions, with the distinct understanding, however, that by so doing we indicate no opinion upon the questions of procedure and practice which might be raised upon this record.

15 S D

Upon the hearing the defendant demanded a trial by jury, which the court denied, and this is assigned as the first error. The constitutional provision that "the right of trial by jury shall remain inviolate" has no application to a summary proceeding of this character. Such guaranty does not extend beyond the cases where such right existed at common law. The provision is that the right "shall remain inviolate." The right of a court to punish for contempt, without the intervention of a jury, was a well-established rule of the common law. In Eilenbecker v. Plymouth Co. Dist. Ct., 134 U. S. 31, 10 Sup. Ct. Rep. 424, the court says: "If it has ever been understood that proceedings according to the common law for contempt of court have been subject to the right of trial by jury, we have been unable to find any instance of it." See, also, State v. Becht, 23 Minn. 411; McDonnell v. Henderson, 74 Iowa, 619, 38 N. W. Rep. 512; State v. Doty, 32 N. J. Law, 403; State v. Matthews, 37 N. H. 450; State v. Durein, (Kan.) 27 Pac. Rep. 148; Gandy v. State, 13 Neb. 445, 14 N. W. Rep. 143.

The defendant then demanded that the evidence of the state upon the question of his alleged contempt be taken orally, and not by affidavit. This was denied, and is assigned as error. Section 13 of the law under consideration, being the section under which this proceeding was had, expressly provides that, upon the examination of the charge of contempt, the "evidence may be oral, or in the form of affidavits, or both." Defendant argues that he was thus deprived of his constitutional right "to meet the witnesses against him face to face." This right, however, is confined to "criminal proceedings,"—such prosecutions as also entitled him to "a speedy public trial by an impartial jury." Section 7, art. 6, Const. The authorities cited on the last point *supra* fully exhibit the character of contempt proceedings. While they are criminal in their nature, they are not of themselves criminal actions or prosecutions. They are incidental to and may occur in any action, civil or criminal, and neither the constitutional right to be tried by a jury, nor to be confronted with the adverse witnesses, exists in such proceedings. It was therefore competent for the law to provide that in such proceedings the evidence might be by affidavit, or oral, or both.

The contention of defendant that the act itself as a whole is void, because in violation of section 21, art. 3, of the constitution, providing that "no law shall embrace more than one subject, which shall be expressed in its title," was fully considered and discussed in State v. Becker, 3 S. D., and a conclusion reached adverse to such claim.

It is next contended that that portion of section 13, in relation to contempt proceedings, which provides that "the affidavits upon which the attachment for contempt issues shall make a *prima facie* case for the state," is unconstitutional, as being an encroachment of the legislative upon the judicial power. It is claimed that it undertakes to determine in advance, regardless of what the affidavits may in fact state, that they shall be *prima facie* evidence of an offense which may be punished criminally, thus seeking to deprive the courts of the power to determine whether the affidavits state sufficient facts to support a conclusion of guilt or not. This construction of the language of this section is too narrow. It must be construed with reference to the known and well-understood procedure of the courts. "It is a cardinal principle in relation to the summary and imperative proceedings by attachment that that writ will not be granted unless a clear case of contempt be established. When the contempt is not committed in *facie curiae*, it must be proved by affidavits from persons who witnessed it." *In re* Judson, 3 Blatchf. 148. In the enactment of the provision criticised by the defendant, the legislature presumed, as they reasonably might, that no attachment would be issued by any court, "unless a clear case" therefor appeared from the affidavits presented, and when such justifying facts did appear to the satisfaction of the court, and at attachment was issued, then the affidavits upon which it was so issued should "make a *prima facie* case for the state." The court first determines whether the affidavits make a case of contempt, and upon that determination grants or withholds the attachment; and the manifest meaning of the law is that, if the court regards the affidavits as sufficient to justify its issuing an attachment, they shall be held upon the hearing as sufficient to make a *prima facie* case against the defendant. So construed, this provision is neither unreasonable nor

novel. The theory of an ordinary order to show cause is that the party in whose favor it is granted has made a *prima facie* case, entitling him to certain relief, and upon the strength of such *prima facie* case the adverse party is called upon to show cause to the court, if any he have, why such relief should not be granted, in accordance with the *prima facie* case made, and this theory and practice prevail equally in proceedings for contempt. Bank v. Schermerhorn, 9 Paige, 372.

The attachment in this case, as far as it affected any right of the defendant to be adjudicated, was an order to show cause. As a warrant, it was only designed to secure his presence in court. This same section 13 is also criticised, as providing "that the party attached shall not be discharged upon his denial of the facts stated in the moving papers." A reference to the law itself shows that this is not a careful reproduction of what the law says. Its language is, (the italics being ours:) "The defendant shall not be *entitled* to a discharge upon his denial of the facts stated in the moving papers." This provision does not assume to interfere with or control the judgment of the court as to the effect of the allegations and denials of the affidavits and counter affidavits. It simply leaves it with the court as a question to be judicially determined. The defendant is not *entitled* to his discharge; that is, he may not claim it as a matter of right, simply because he denies the facts alleged in the moving papers. It is still left to the court to say whether, under all the facts and circumstances bearing upon the candor and probable truthfulness of both the assertion of the facts and their denial by the defendant, such *prima facie* case is overcome.

As to the objection that the act compels a defendant to be a witness against himself, by providing that he "may be required to make answer to interrogatories," etc., it is sufficient to say that it is not claimed that in this case defendant's rights were so violated. If it were conceded that this provision of the law could not be sustained, it would not help the defendant in this case. He is not in position to take advantage of it. It is a well-established and wholesome rule of law that no one can take advantage of the unconstitutionality of any provision of a law who has no interest

in and is not affected by it. State v. Becker, (S. D.) 51 N. W. Rep. 1018; State v. Snow, 3 R. I. 64; Stickrod v. Com., (Ky.) 5 S. W. Rep. 580; Sinclair v. Jackson, 8 Cow. 543.

It is next assigned as error that the court admitted and afterwards refused to strike out the testimony of Mahlon Roseman, for the reason that "it in no way tended to prove that defendant was guilty of contempt." To this objection there are several adequate answers. We have already noticed the provision of the law that the affidavits upon which the attachment is issued shall make a *prima facie* case for the state. The effect of this would be that until the defendant had offered some evidence either in denial or in explanation of the facts stated in the moving affidavits, the state could rest upon the case already made. The defendant offered no evidence at all. Again, the alleged contempt consisted in violating the court's injunction to said defendant to desist and refrain from selling, or keeping for sale, or bartering or giving away, any intoxicating liquors, and particularly upon certain definitely described premises, and requiring him to close up and discontinue the use of said premises for said purpose. The testimony of the witness which appellant objected to as not pertinent was that he knew the defendant, and was "acquainted with his ice-house over there," being the same premises referred to in the injunction; that in the month of November, 1890, (during the pendency of the injunction,) he drank two glasses of beer there; that he saw a bottle of whisky sold there; that he saw other liquor sold and drank there. It is true that this evidence does not directly or in terms connect the defendant with these sales, but it expressly locates such sales on his premises known as the "ice-house." They were the same premises against which these proceedings were directed, and for whose proper use defendant was presumably responsible. The trial was to the court, and we do not think it was error to refuse to strike out such evidence. In Neighbors v. Com., (Ky.) 9 S. W. Rep. 718, a conviction for the alleged sale of liquor was sustained where it appeared that defendant was in possession of the house where witnesses drank the liquor, and where they left the money therefor on the counter, defendant not being immediately present; although both witnesses

on whose evidence the conviction rested testified that they never bought any liquor from defendant or saw him sell any. The affidavits of Eggebratten and Haber were full and explicit, and averred many sales of liquor in violation of the injunction, and were sufficient to support the judgment of the court, unaided by the evidence of Roseman. As observed in the beginning, we treat this case as though the questions discussed were properly before us, including that of the sufficiency of the evidence to sustain the judgment, without any intention of establishing it as a precedent. We decline to disturb or reverse the judgment of the circuit court.