*In re* TARA SANDERS *et al.*, Minors.—(THE PEOPLE *ex rel.* DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Petitioner-Appellant, *v.* JOHN SANDERS *et al.*, Respondents-Appellees.)

Fourth District   No. 15466

Opinion filed October 12, 1979.

Paul C. Komada, State's Attorney, of Charleston (Rick L. Hobler, Assistant State's Attorney, Marc D. Towler and Larry Wechter, both of State's Attorneys Appellate Service Commission, of Springfield, of counsel), for appellant.

Frederick C. Kubicek, and Ronald Tulin, of Ronald Tulin, Ltd., both of Charleston, for appellees.

Lonnie Lutz, of Charleston, guardian ad litem.

Mr. JUSTICE MILLS delivered the opinion of the court:

Were the parents unfit?

The trial judge—sitting at bench—said no.

We will not second-guess him.

We affirm.

The Illinois Department of Children and Family Services (DCFS) filed a petition seeking to have Chad and Tara Sanders declared neglected and made wards of the court. It was also requested that the minors' parents, John and Rebecca Sanders, be found unfit persons and that the DCFS be given the power to consent to adoption. At the close of the DCFS' case, the trial court granted a motion for judgment by the respondent-parents on the issue of parental fitness. The court then proceeded to declare the minors neglected and placed them in the custody of the mother, subject to supervision by the DCFS.

The DCFS now appeals the granting of the motion for judgment.

Of the 14 statutory grounds for "unfit person," 7 were alleged in the trial court and 5 are argued in this court. The Adoption Act provides:

"D. 'Unfit person' means any person whom the court shall find to be unfit to have a child sought to be adopted, the grounds of such unfitness being any one of the following:

(a) Abandonment of the child;

(b) Failure to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare;

(c) Desertion of the child for more than 3 months next preceding the commencement of the Adoption proceeding;

❋ ❋ ❋

(i) Depravity;

❋ ❋ ❋

(k) Habitual drunkenness or addiction to drugs, other than those prescribed by a physician, for the space of one

year prior to the commencement of the adoption proceeding." Ill. Rev. Stat. 1977, ch. 40, par. 1501(D).

## STANDARD FOR D.V.

■■ As the DCFS concedes, at least one of the statutory grounds must be proven by clear and convincing evidence. (*In re Tolbert* (1978), 62 Ill. App. 3d 927, 378 N.E.2d 565.) The DCFS claims, however, that the evidence presented to the trial court, when viewed in a light most favorable to it, was sufficient to present a *prima facie* case and require a denial of the motion for a directed verdict.

At the outset, we reject the standard urged upon us by the DCFS.

It is true that in a jury trial the trial court is required to view the evidence in a light most favorable to the party opposing a motion for a directed verdict. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) This standard does not, however, apply to bench trials. In *City of Evanston v. Ridgeview House, Inc.* (1976), 64 Ill. 2d 40, 349 N.E.2d 399, our supreme court declared that on a motion for judgment in a bench trial the trial court is required by section 64(3) of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 64(3)) to weigh all the evidence. It is, after all, *the* trier of fact.

The DCFS points to the case of *County of McHenry v. Duenser* (1977), 49 Ill. App. 3d 125, 363 N.E.2d 1197. There, in reviewing a trial court's determination upon a motion for directed verdict in a bench trial, the court applied the *Pedrick* standard. We note that a section 64(3) motion requests the trial court to enter judgment and not to direct a verdict. To the extent that the *Duenser* case is inconsistent with the supreme court's directives in *City of Evanston,* we reject it.

Having thus isolated the proper standard to be employed, we now look to see whether the trial court's determination was contrary to the manifest weight of the evidence.

## DEPRAVITY

■■ One ground asserted in regard to both the father and the mother was *depravity.* In order to succeed in this contention, the DCFS was required to establish—by clear and convincing evidence—repetitious acts of sufficient duration to establish a deficiency in a moral sense and either an inability or an unwillingness to conform to accepted moral standards. *Young v. Prather* (1970), 120 Ill. App. 2d 395, 256 N.E.2d 670.

In the present case, a stipulation was entered which stated that the respondent father had been convicted of burglary, resisting a police officer, aggravated battery, deceptive practices, and criminal damage to property. He had been incarcerated for 3 of the 5 years of his marriage and was incarcerated at the time of the hearing.

The claim of depravity as to the mother also focuses upon her criminal past. While the evidence presented at the hearing concerning her record was confusing, the parties to this appeal have operated under the assumption that there had been four convictions. Two convictions were for driving without a valid driver's license. Another conviction was for theft of services which apparently arose out of a misunderstanding with a taxi driver. The final conviction was for disorderly conduct.

It has been held that a felony conviction is insufficient, in and of itself, to provide an adequate basis for a determination of unfitness on the grounds of abandonment and desertion. (*Townsend v. Curtis* (1973), 15 Ill. App. 3d 209, 303 N.E.2d 566, *cert. denied* (1977), 431 U.S. 907, 52 L. Ed. 2d 391, 97 S. Ct. 1702.) Likewise, the mere fact that a parent has been convicted of a felony—even a number of felonies—is not sufficient to establish depravity. The criminal record of a person, while highly persuasive, is only one factor to be considered. The statutory ground of depravity requires the trier of fact to closely scrutinize the character and credibility of the person. On this determination we are inclined to give deference to the decision of the trier of fact.

Additionally, the process of a depravity adjudication requires a Janus view of past actions so as to measure an individual's present and future value system. While a criminal record reveals a rejection of societal mores in the past, it is not conclusive. There must be some allowance for an individual to become rehabilitated, otherwise we are merely compounding the punishment for the crime by declaring the perpetrator an unfit person and terminating his parental rights.

■■ In the case at bench a significant question has been raised concerning the moral sense of the parents. We cannot say, however, that the trial court's finding that the DCFS has failed to meet its burden by clear and convincing evidence is against the manifest weight of the evidence.

## HABITUAL DRUNKENNESS

■■ The next argument presented is that the DCFS established the *habitual drunkenness* of the mother. The parties have not cited to us, nor have we found, any case which defines habitual drunkenness as used in the adoption provisions herein. We note that the identical term was used in the Divorce Act (Ill. Rev. Stat. 1973, ch. 40, par. 1 *et seq.*) and incorporated into the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 101 *et seq.*). The interpretation of the term as used in those acts is highly persuasive. We see no reason why habitual drunkenness should have a different meaning here.

In *Garrett v. Garrett* (1911), 252 Ill. 318, 326, 96 N.E. 882, 885, the supreme court defined habitual drunkenness as: "an irresistible habit of getting drunk; * * * a fixed habit of drinking to excess; * * * an

involuntary tendency to become intoxicated, which is acquired by frequent repetition,—such a frequent indulgence to excess as to show a formed habit and inability to control the appetite."

At the hearing on the petition, the mother stated that she had a drinking problem and that she had indulged in excess three times in 1978. On at least two occasions since May of 1976, she was a resident of an alcohol and drug treatment center and she was also treated on occasion as an outpatient. The program director of the treatment center, whose expertise was derived from being a recovered alcoholic, spoke to the mother on a number of occasions but was not her counselor. The director believed that the mother behaved like an alcoholic because of her impatient and impetuous actions. She could not, however, state that the mother *was* an alcoholic.

■■ The record at best illustrates that the mother had a problem which she was attempting to control. We cannot say that the trial court's findings on this issue were against the manifest weight of the evidence.

### ABANDONMENT AND DESERTION

The Department of Children and Family Services also attempted to show *abandonment*. Abandonment is conduct on the part of a parent which demonstrates a settled purpose to forego all parental duties and to relinquish all parental claims to the child. *In re Petition to Adopt Cech* (1972), 8 Ill. App. 3d 642, 291 N.E.2d 21.

From April of 1975 to February of 1976, and again from May of 1977 to January of 1978, the minors were voluntarily placed with the DCFS. During the total of 18 months that the children were with the DCFS, the mother testified that she visited with the children a total of 15 times. (The DCFS only allowed one visit per month during placement.) Additionally, the mother also stated that she gave the children Christmas presents in 1977 and 1978 and birthday presents in 1978. This testimony was corroborated to a large extent by the foster parents who had temporary custody of the minors.

■■ Relying exclusively upon the case of *Stalder v. Stone* (1952), 412 Ill. 488, 107 N.E.2d 696, the DCFS asserts that the facts noted above also constitute *desertion*. Desertion is any conduct on the part of the parent which indicates an intention to permanently terminate custody over the child but not to relinquish all parental duties and claims. *Cech.*

In *Stalder*, the supreme court affirmed a county court's determination of abandonment and in so doing noted that the facts would have been sufficient to justify a finding of desertion. The defendant mother had never acknowledged the child as her own. The mother's entire contact with the child was characterized by efforts to get rid of him and there was no intimation from the defendant's conduct that she ever intended to

assume care of the child. She merely acted as an agent for some unknown parent in finding a refuge for the child. The court also noted that had the defendant died before the adoption proceeding, the child could not have proved his right to inherit from her, and at no time could defendant have been required to fulfill a single legal duty in connection with the mother-child relationship from the time the child was born.

■■ We feel that the interest, care, and concern exhibited by the mother in this case is the type of activity which was noticeably absent in the *Stalder* case. Under these facts, we feel the trial court correctly rejected the claim of the DCFS that the mother had abandoned or deserted the children.

■■ The contention of the DCFS that the respondent father was guilty of abandonment and desertion raises a question which has not been squarely addressed by our courts. The evidence at the hearing indicated that the father here was incarcerated for almost the entire period of time in question. The DCFS now points to the lack of visits to show abandonment and desertion. The trial court in announcing its finding stated that it knew of no authority which would allow him to terminate parental rights of a person who was sentenced to the penitentiary. This statement is subject to different interpretations. If the trial court was saying that the mere fact of incarceration is insufficient to establish unfitness, we agree. If, on the other hand, the court was saying that incarceration provided an immunity to this type of proceeding, we disagree. When the trial court's statement is read in light of the arguments of counsel that it addresses, it appears as if the court applied the correct standard of law.

In the case of *Peyla v. Martin* (1976), 40 Ill. App. 3d 373, 352 N.E.2d 407, the trial court declared the natural father unfit on the ground of abandonment and failure to maintain a reasonable degree of interest and concern. After stating that the conduct must evidence an intent to abandon, the appellate court reversed, noting that during the time period in question the defendant was on parole. In so doing, the court examined the restraints upon the liberty of the respondent while on parole.

■■ Likewise, in the present case, the crucial determination was whether the father intended to either abandon or desert the children. The trial court may properly consider imprisonment as it relates to the father's intent. But if the only reason that the respondent has not visited or cared for the children is his imprisonment, he could not be held to have the intent to abandon or desert. In this regard, however, we note that there are a number of things a person can do while in prison which would indicate a lack of intent to abandon or desert.

In the present case, the father was released for a short period during the time in question. Upon release, he set up residence with the

respondent mother in Indiana. At this time the children were in placement with the DCFS. The record evidences a weekend visit with the children during this period which may or may not have been authorized by DCFS. Additionally, there was testimony that the father had sent letters and drawings to the children prior to their involvement with the DCFS. Finally, prior to his incarceration, he cooked meals and read to the children on numerous occasions.

Under these facts, the trial court quite properly could have concluded that the DCFS failed to show by clear and convincing evidence that the respondent father had abandoned or deserted the children.

#### CONCERN FOR CHILDREN'S WELFARE

■■ The final argument advanced by the DCFS is that the parents were unfit due to a failure to maintain a reasonable degree of interest, concern, or responsibility as to the children's welfare. The evidence showed that the mother visited the children 15 times and sent presents on birthdays and at Christmas. The father sent letters and drawings while incarcerated and arranged a visitation upon his release. Upon these facts, we cannot say that the trial court's ruling was against the manifest weight of the evidence.

For the above stated reasons, the decision of the trial court is affirmed.

Affirmed.

REARDON, P. J., and CRAVEN, J., concur.