374 N.W.2d 889 (1985)
The PEOPLE of the State of South Dakota In the Interest of M.W. a/k/a M.V.G., a Child, and Concerning S.W., S.V.G., and J.V.G., Respondents.
No. 14691.
Supreme Court of South Dakota.
Argued April 11, 1985.
Decided September 25, 1985.
*891 Terry L. Pechota of Finch & Viken, Rapid City, for appellant-respondent Mother/Stepfather.
Stanley E. Whiting of Day, Grossenburg & Whiting, Winner, for appellee Natural Father.
Janice Godtland, Asst. Atty. Gen., Pierre, for appellee State of S.D.; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.
MORGAN, Justice.
This appeal arises from the trial court's adjudication that M.W. is a dependent and neglected child and the subsequent dispositional decree under which custody of M.W. was changed from S.V.G. (mother) to S.W. (father), and we affirm.
On January 30, 1984, mother called to the attention of school authorities the large number of bruises on M.W., which mother had found while bathing her. She suggested that M.W. had sustained the bruises while playing. The school authorities had M.W. checked by a physician, who reported that the bruises evidently resulted from three or four different incidents. The physician reported that M.W. had approximately fifty-five to sixty bruises on all areas of her body. He believed the bruises were caused in large part by blows with a blunt instrument. Also, during this examination, blood was discovered in M.W.'s urine and believed to be caused by a blow to one of her kidneys.
Subsequent to this examination, M.W. was taken into custody by the Bennett County Sheriff's Office, noting that she was believed to be a dependent or neglected child under SDCL 26-8-6(3).[1] A summons, which included notice that termination of parental rights was a possibility and that all parties were entitled to legal representation, was served on mother and J.V.G. (stepfather) the day after the bruises were discovered. Notice of a detention hearing was also served.
At the detention hearing, the trial judge, The Honorable Donald L. Heck, ordered that M.W. be returned to her home, under the conditions: 1) that M.W. always be in the immediate presence of her mother except when M.W. is in school, and 2) that both mother and stepfather submit themselves to a polygraph examination. The trial judge further noted that he would reconsider the State's request for removal of the child from her home if either mother or stepfather failed the polygraph examination.
On February 6, 1984, Judge Heck, reacting to stepfather's apparent failure to pass the polygraph examination, ordered M.W. removed from her home and placed in the temporary custody of the Department of Social Services.
Following this order, counsel for mother requested that Judge Heck remove himself from the remaining proceedings, pursuant to SDCL 15-12-21.1. On March 14, 1984, Judge Heck moved to recuse himself from the proceedings and asked the presiding judge of the circuit to appoint another judge to preside over the case. On March 19, 1985, Judge Robert A. Miller was appointed in Judge Heck's stead.
On April 5, 1984, an adjudicatory hearing was held. Twenty witnesses presented over eleven hours of testimony. Besides the report of the attending physician, which instigated these proceedings, there was evidence of marital difficulties between mother and stepfather. Incidents of spousal abuse and drinking problems were established. Based upon the physical examination of M.W., the observations of the Department of Social Services, and testimony by M.W.'s teacher and M.W.'s natural father, S.W., the trial court determined that the allegations in the petition were established by clear and convincing evidence, and declared M.W. a dependent and neglected child.
*892 On May 17, 1984, the trial court held a dispositional hearing. Following the hearing, the trial court ordered a psychological examination of the child. It also ordered a court services report on the home environment of mother and stepfather and a California home study report on the home of S.W. Mother's counsel was given an opportunity to depose the psychologist. Following receipt of these items, the court transferred custody to S.W., but allowed mother liberal visitation rights and stepfather limited, supervised visitation rights.
Mother and stepfather initially contend that the ordering of a polygraph test during the detention hearing so tainted the entire proceedings that it constituted reversible error. It is settled law in South Dakota that polygraph results are not admitted into evidence in criminal proceedings. State v. Muetze, 368 N.W.2d 575 (S.D.1985); State v. Watson, 248 N.W.2d 398 (S.D.1976); State v. O'Connor, 86 S.D. 294, 194 N.W.2d 246 (1972). The rationale advanced for not admitting polygraph results is that such evidence is irrelevant because of dubious scientific value; it has no general scientific acceptance as a reliable and accurate means of ascertaining truth or deception; it is not reliable; and, it has no probative value. Sabag v. Continental South Dakota, 374 N.W.2d 349 (S.D.1985). In Sabag, we held that a psychological stress evaluation, which has the same intent and purpose as a polygraph examination, was not admissible in a civil proceeding.
In this case, the polygraph results were only used by the court to reconsider its order following the detention hearing. The results were not used in any subsequent hearing. Judge Miller specifically noted "the fact that [a polygraph examination] was ordered pursuant to Judge Heck... doesn't influence the court at all." Judge Miller further stated: "I have no intention of reading [the polygraph examination]," and "the court will not consider the polygraph in making a decision based upon this proceeding." Counsel for mother then noted that "if the court deems that not admissible and that it won't consider it... I don't have any objection with this matter proceeding." If mother and stepfather's claim is error in the detention hearing, they failed to perfect an appeal from this portion of the proceeding because it is settled law in this state that, unless after a showing of prejudice, we do not review temporary custody awards, which are no longer in effect after the final adjudication of dependency and neglect, or the termination of parental rights. Matter of A.M.L., 371 N.W.2d 358 (S.D.1985); Matter of N.J.W., 273 N.W.2d 134 (S.D.1978).
We fail to see how the polygraph examination influenced Judge Miller during the adjudicatory hearing. He specifically noted that he would not consider the results of the examination during the hearing because he deemed it inadmissible evidence. When an action is tried to the court, the presumption is that improperly admitted testimony is disregarded. N.J.W., supra; Sulzbach v. Town of Jefferson, 83 S.D. 156, 155 N.W.2d 921 (1968). In this case, the polygraph examination was not admitted into evidence, clearly establishing that inadmissible polygraph evidence was not before the trial court during the adjudicatory hearing.
Mother next contends that the trial court improperly admitted hearsay evidence during the adjudicatory hearing. Specifically, she contends that the admission of testimony by three people that M.W. told them that stepfather had hit her was erroneous. We disagree.
All adjudicatory hearings in dependency and neglect cases shall be conducted in accordance with applicable law and rules of civil procedure. SDCL 26-8-30. Unless otherwise provided by the rules of civil procedure, evidence adduced in a civil proceeding shall conform to the rules of evidence. SDCL 15-6-43(a). Accordingly, hearsay testimony is not admissible in adjudicatory hearings unless it falls within one of the recognized exceptions. See SDCL 19-16.
*893 Although the trial judge made no specific finding as to which particular hearsay exception he was invoking to admit the offered testimony, State claims that the hearsay evidence was properly admitted under one of the so-called residual exceptions, SDCL 19-16-35.[2]
Mother cites us to State v. McCafferty, 356 N.W.2d 159 (S.D.1984), for the proposition that the trial court must determine on the record the trustworthiness of a statement admitted under SDCL 19-16-35. McCafferty, however, involved a criminal action tried to a jury. The imperative nature of a full and complete record on an evidentiary ruling is not present when a civil action is tried before the court. Indeed, as noted above, the presumption is that when an action is tried to the court, improperly admitted testimony is disregarded. N.J.W., supra.
Initially, a statement admitted under the residual exception rule, SDCL 19-16-35, may be admitted only if the declarant is unavailable as a witness. Unavailability may mean inability to testify meaningfully. McCafferty, supra; United States v. Iron Shell, 633 F.2d 77 (8th Cir. 1980). M.W. was preliminarily examined by Judge Miller who determined that she would be unable to testify meaningfully. Therefore, the admission of hearsay statements attributed to her is governed by SDCL 19-16-35.
The first element of SDCL 19-16-35, the trustworthiness of the statement, is synonymous with the indicia of reliability of the statement referred to in confrontation clause cases. McCafferty, supra. We note, however, that such language arose to protect the accused in a criminal action. Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). The constitutional implications of the confrontation clause of the Sixth Amendment and its similar South Dakota provision, Article VI, section 7, are not present in a civil action. Cf. State v. Mitchell, 3 S.D. 223, 52 N.W. 1052 (1895). We have recently held that dependency and neglect proceedings are civil in nature. Matter of C.J.H., 371 N.W.2d 345 (S.D.1985). Therefore, in determining whether the statement bears sufficient indicia of reliability, the trial court is not faced with the highly onerous burden placed upon it in criminal cases. This is not to say that the court can or should admit the statement under the exception without determining its trustworthiness.
A trial court, in determining the sufficiency of the guarantees of trustworthiness, should consider the age and maturity of the child, the nature and duration of the abuse, the relationship of the child to the offender, the reliability of the assertions, and the reliability of the child witness. McCafferty, supra. Although these guidelines were established for sexual abuse criminal prosecutions, they provide some guidance for the trial court to consider in other cases involving a child witness. With respect to nature and duration, the record establishes that the abuse was inflicted by a blunt object on more than one occasion. Stepfather had ample opportunity to inflict such injury and he had a history of spousal abuse of mother.
As to the reliability of M.W.'s statements, initially she could not explain the *894 bruises and then accused a playmate at school. Testimony from school officials showed that the children were supervised at all times and M.W. could not have received the bruises in an altercation at school. Finally, M.W. named stepfather as the person who hit her and related this to all three persons who questioned her about the bruises. We further note that the explanations by stepfather and mother were inconsistent concerning the bruises.
Mother and stepfather also contend that the requirement of subsection (2) of SDCL 19-16-35 was not met. This subsection requires that the admitted statement be more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts. The purpose of the statements by S.W., Social Services Department caseworker Janice Walker, and Caroline Miller, a Bennett County Sheriff's Office employee, was to show that M.W. had named stepfather as the person who hit her. M.W. was also examined to determine her ability to testify meaningfully. She was unable to do so. Therefore, the only evidence probative on the point of who inflicted the bruises on M.W. was the hearsay statements admitted. The requirement of subsection (2) was met.
Mother also claims that the interests of justice were not met by the admission of the hearsay statements. See SDCL 19-16-35(3). In a dependency and neglect hearing, the best interests of the child are of paramount consideration. SDCL 26-8-36; People in Interest of P.B., 371 N.W.2d 366 (S.D.1985). We fail to see how justice would not be served when probative evidence, albeit hearsay, is admitted in a case where a child's welfare is at stake.
Mother also contends that the notice requirement of SDCL 19-16-35 was not met. She, however, failed to object to the offered testimony on the basis of lack of notice during the adjudicatory hearing. When no objection is raised at trial, matters thought to constitute error cannot be raised upon appeal. C.J.H., supra; Matter of S.J.Z., 252 N.W.2d 224, 225 (S.D.1977). As such, this contention is not reviewable.
Mother next claims that the evidence adduced at the adjudicatory hearing was insufficient to support an adjudication of dependency and neglect. The required standard of proof a trial court must apply at an adjudicatory hearing is "clear and convincing evidence." SDCL 26-8-22.10; People in Interest of S.L.H., 342 N.W.2d 672 (S.D.1983). In reviewing a dependency and neglect adjudication, the standard this court uses is whether the findings of the trial court were clearly erroneous. SDCL 15-6-52(a); P.B., supra; A.M.L., supra. In determining whether the trial court was clearly erroneous, this court must be left with "a definite and firm conviction that a mistake has been made" after a review of the evidence. Matter of A.M., 292 N.W.2d 103, 105 (S.D.1980); see also Matter of J.L.H., 316 N.W.2d 650 (S.D.1982); Matter of R.H., 300 N.W.2d 271 (S.D.1981).
Evidence that child abuse has occurred is prima facie evidence that the child is neglected or dependent. SDCL 26-8-22.10. This court has previously determined that a solitary instance of abuse may be considered as prima facie evidence of abuse under the statute. A.M., supra.
The trial court found M.W. was a dependent and neglected child, based upon evidence of physical abuse. A physician testified that the number and types of bruises found on M.W. were consistent with blunt trauma. Janice Walker testified that her observations of M.W. were consistent with that of an abused child. Testimony was elicited showing marital difficulties between mother and stepfather, including spousal abuse. The trial court also found that the evidence did not support the proposition that M.W. was injured at school, a theory advanced by mother and stepfather. Following review of this and other evidence in the record, we cannot state that the trial court was clearly erroneous in its determination that M.W. was a dependent and neglected child, occasioned by the physical abuse upon her. Accordingly, the trial court's adjudication is affirmed.
*895 Mother also contends that the failure to appoint counsel for M.W. was fatal. She claims that SDCL 26-8-22.2[3] requires the court to appoint counsel to insure the interests of the child are adequately protected. Mother fails to properly read this statute. SDCL 26-8-22.2 calls for appointment of counsel for the child in the discretion of the court. It is within the inherent power of the court to protect the interests of a child in a dependency and neglect proceeding. People in Interest of D.K., 245 N.W.2d 644 (S.D.1976). Accordingly, the decision to appoint counsel for the child is properly within the court's discretion. A review of the record shows the interests of the child were adequately protected during all stages of the proceedings.
Mother also argues that the trial court was dilatory in scheduling the hearings, in contravention of SDCL 26-8-23.2.[4] Mother, however, makes no substantiated claim of harm which resulted from the alleged dilatory scheduling. In this case, the detention hearing was held February 1, 1984. Following recusal of Judge Heck, and the subsequent appointment of Judge Miller, the adjudicatory hearing was held April 5, 1984. The dispositional hearing was held May 17, 1984. Approximately three and one-half months passed between the time when the State learned of the alleged dependency and neglect of M.W. and the date of the dispositional hearing. Inasmuch as mother and stepfather show no prejudicial harm from this delay, which in large part was caused by the recusal of the first judge, we find this claim has no merit.
The next argument Mother raises is based upon the trial court's receipt of two additional pieces of evidence following the dispositional hearing. The trial court ordered a psychiatric evaluation of M.W. and a Court Services home study prior to its final decree of disposition. Mother claims this was prejudicial error. SDCL 26-8-30 allows the trial court latitude in dispositional hearings, so that it may be best informed as to the condition and welfare of the child. SDCL 26-8-22.13 allows the court to continue the dispositional phase of a dependency and neglect proceeding for a reasonable period to receive reports or other evidence. The trial judge here was simply instituting a statutory prerogative. We fail to see the error in admitting the additional information. The trial court was simply trying to ascertain the best interests of the child prior to final disposition. It is noteworthy that mother's counsel acquiesced in the court's declaration at the dispositional hearing that these items needed to be considered before final disposition.
In any event, mother has shown no harm from the additional items received into evidence. Her counsel was given the chance to depose the psychiatrist and the deposition is what the court considered as additional testimony.
Finally, mother argues that placing M.W. in the custody of S.W., her natural father, was a defacto termination of the parental rights of mother and as such was not the least restrictive alternative available to the trial court. A trial *896 court may order a change of custody of a child following an adjudication of dependency and neglect. SDCL 26-8-35(1). When viewing whether the trial court has imposed the least restrictive alternative, it is determined from the child's point of view. People in Interest of J.S.N., 371 N.W.2d 361 (S.D.1985). Here, the trial court did not terminate the parental rights of mother. She is granted liberal visitation rights under the dispositional decree. Granted, M.W. will now reside in California and visitation by mother may prove difficult. Mother argues that the change in custody destroys the natural bond between parent and child that the State is bound to protect, absent extraordinary circumstances. See People in Interest of S.L.H., supra; Matter of B.E., 287 N.W.2d 91 (S.D. 1979). We find this argument illogical. First, the parental rights of mother were not terminated by the dispositional decree. Second, M.W. had been adjudicated dependent and neglected, based upon stepfather's physical abuse of her. In the interests of the child, the court transferred custody to her natural father, whom the court determined was better able to provide the environment necessary for her proper growth. See, e.g., J.S.N., supra; People in Interest of M.J.B., Jr., 364 N.W.2d 921 (S.D.1985).
Accordingly, we affirm.
FOSHEIM, C.J., and WUEST, Acting J., concur.
HENDERSON, J., concurs in result.
HERTZ, Circuit Judge, acting as a Supreme Court Justice, not participating.
HENDERSON, Justice (concurring in result).
Results in a case are one thing. Precedent created by language in an opinion is quite another.
There is ample evidence to sustain findings that this child was abused and that she should be removed from the home environment. Separate and apart from hearsay evidence, circumstantial evidence all pointed toward the stepfather doing physical hurt to this child on numerous occasions and the mother either tolerating it or covering it up. This Court has, in the past, seen fit to affirm cases where a parent's rights were terminated if that parent approved, by inaction, the physical abuse of a child.
In Matter of C.J.H., 371 N.W.2d 345, 350 (S.D.1985), we held that "[u]nder SDCL 19-9-14(7), however, the rules of evidence contained in SDCL chs. 19-9 to 19-18, inclusive, do not apply in dispositional hearings in juvenile court."[1] Therefore, if there is broad language in this opinion contrary to that statement, which I believe there to be, I repudiate it. A law-trained mind, with experience, should be able to understand why the Legislature has adopted two standards for the application of the rules of evidence. A higher degree of proof and greater degree of accuracy and reliability should be required in the proof during an adjudicatory hearing. It is understandable that strict rules of evidence should apply.[2] When dispositional hearings are at hand, the rules may be relaxed to the extent of determining the best interests of the child and the various opinions that arise as to the alternatives available to a trial judge. I am extremely concerned that parents can lose their children, forever in the law, based upon strictly hearsay evidence in an adjudicatory hearing.[3] *897 Here, no advance warning was given, under the statute, of an intention to use hearsay evidence. Therefore, it was presented to the court without an early basic objection thereto. As the hearsay evidence came in, however, the objections to the hearsay were interposed and were, by and large, overruled. The child's testimony was determined to be untrustworthy in a court of law. Yet, it was not deemed to be so untrustworthy or so unreliable that her statements could be used, through third parties, in a courtroom. In other words, her first-hand statements became hearsay evidence through other witnesses. The trial court's rationale was that the six-year-old could not meaningfully testify.
Lastly, the mother has not lost her child but only her immediate custody. She has a right and an opportunity to be heard again and it appears to me that the trial judge believed that it was wise to terminate the custodial ties, but not the mother-child relationship, on a permanent basis. In this, I believe that the trial judge used good judgment.
NOTES
[1] SDCL 26-8-6(3) provides:

In this chapter unless the context otherwise plainly requires "neglected or dependent child" means a child:
....
(3) Whose environment is injurious to his welfare[.]
[2] SDCL 19-16-35 provides:

A statement not specifically covered by any of §§ 19-16-30 to 19-16-34, inclusive, but having equivalent circumstantial guarantees of trustworthiness, is not excluded by § 19-16-4 if the declarant is unavailable as a witness and if the court determines that
(1) the statement is offered as evidence of a material fact;
(2) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and
(3) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.
However, a statement may not be admitted under this section unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.
[3] SDCL 26-8-22.2 provides:

If the child or his parents, guardian, or other custodian requests an attorney and is found to be without sufficient financial means, counsel shall be appointed by the court, where the petition is for the determination that the child is either in need of supervision or delinquent, or when the petition is for determination of whether the child is neglected or dependent, and the termination of parental rights is stated as a possible remedy in the summons, the court may appoint and fix compensation for counsel without such request if it deems representation by counsel necessary to protect the interest of the child or of other parties. Compensation of counsel shall not exceed that provided in §§ 23A-40-3 and 23A-40-4, which, together with the necessary costs and expenses incident to the proceedings in either the juvenile or reviewing court, or both, shall be paid by the county in which the adjudicatory hearing is held.
[4] SDCL 26-8-23.2 provides:

In scheduling investigations and hearings, the court shall give priority to proceedings concerning a child who is in detention or who has otherwise been removed from his home before an order of disposition has been made.
[1] See language in SDCL 26-8-30 prescribing that the hearings "shall be conducted under such rules and regulations as the court may prescribe and designed to inform the court fully as to the exact status of the child...." (Emphasis supplied mine.)
[2] Accord: Matter of V.D.D., 278 N.W.2d 194, 196 (S.D.1979).
[3] When hearsay evidence is adduced by the State, and received by the trial court, it cannot be a rambling, misty, groping, shrouded attempt to somehow hopefully be received by the trial court as a residual or recognized exception to the hearsay rule. Furthermore, the trial court should spread on the record the recognized exception under which the hearsay is being admitted. If this is not done, we have a loose, open-ended evidentiary proceeding likened unto a shotgun blast with the hopes that some buckshot will hit the target.