303 N.W.2d 102 (1981)
In the Matter of R. N., D. N., L. N., H. N., and S. N., Alleged Neglected and Dependent Children and M. N., Their Mother, Appellant.
No. 13119.
Supreme Court of South Dakota.
Submitted on Briefs January 9, 1981.
Decided March 11, 1981.
Janice C. Godtland, Asst. Atty. Gen., Pierre, for appellee State of South Dakota; Mark V. Meierhenry, Atty. Gen., Pierre, on the brief.
Joseph G. Rimlinger, East River Legal Services, Sioux Falls, for appellant mother, M. N.
DUNN, Justice.
This is an appeal from a decree of disposition entered on March 17, 1980, which terminated the parental rights of M. N., the mother, in her five children.[1] We affirm.
This action initially stems from a June 6, 1975, hearing wherein M. N.'s parental rights were terminated. It was discovered that this order was fatally defective[2] and a new petition requesting termination of her parental rights was filed on March 22, 1978. A hearing on the new petition was held on October 2, 1978, at which time the trial court entered an order terminating the parental rights of the two natural fathers. The trial court, however, chose to hold the petition for termination of M. N.'s parental *103 rights in abeyance for one year. Pursuant to the October 2, 1978, order, during the one-year period of abeyance, M. N. was to maintain contact with the South Dakota Department of Social Services (Department); demonstrate her capability of holding a job; demonstrate her capability of maintaining a home adequate for her children to live in; curb her consumption of alcohol; and cooperate with agents of the Department.
On December 10, 1979, the original 1978 petition was brought forward for a hearing, at which time the trial court found that M. N. had not fulfilled the conditions of the October 2, 1978, order. The trial court therefore terminated her parental rights.
M. N. raises only two meritorious issues on appeal, which may be summarized as: (1) Does the Indian Child Welfare Act of 1978 apply to proceedings which were initiated prior to enactment of that Act, but which are not concluded until after the Act becomes effective? (2) Did the trial court err in finding that M. N. had not met the conditions it had imposed upon her in its October 2, 1978, order?
Turning first to whether the Indian Child Welfare Act of 1978 (the Act) applies to this action, we find this issue is disposed of by the language of the Act itself. 25 U.S.C.A. § 1923 provides:
None of the provisions of this subchapter, except sections 1911(a), 1918, and 1919 of this title, shall affect a proceeding under State law for foster care placement, termination of parental rights ... which was initiated or completed prior to one hundred and eighty days after November 8, 1978, but shall apply to any subsequent proceeding in the same manner or subsequent proceedings affecting the custody or placement of the same child.
It is urged by M. N. that the December 10, 1979, hearing was a subsequent proceeding, as contemplated by the Act, and as such the State must comply with all of the requirements of the Act. The trial court found that this was not a subsequent proceeding and therefore the Act did not apply.
A similar argument was raised in Matter of T. J. D., 615 P.2d 212 (Mont.1980), where appellants alleged that the Indian Child Welfare Act of 1978 applied to proceedings which had been initiated prior to the enactment of the Act. Therein, the State had filed a petition for termination of parental rights on March 1, 1979; the Act became effective on May 7, 1979, which is one hundred eighty days after November 8, 1978. A hearing regarding the father's parental rights was held on July 6, 1979. On appeal it was argued that the July 6, 1979, hearing was a subsequent proceeding as contemplated by the Act. The Montana Court held that:
The July 6 proceeding, however, was not a separate proceeding under the Act. Rather, it was a continuation of the action initiated by the State .... This action or proceeding was not terminated until the parental rights of both parents had been adjudicated. It is clear, therefore, that the Indian Child Welfare Act did not apply to these proceedings.
T. J. D., supra, at 217. It is equally clear that the Act is not applicable here. SDCL 26-8-22.13 allows for the continuance of a dispositional hearing. As in T. J. D., this action was not terminated until M. N.'s parental rights had been determined; it was merely a continuance and not a subsequent proceeding, therefore, the Act does not apply to the December 10, 1979 hearing.
We now turn to the question of whether the trial court erred in finding that M. N. had not met the conditions set out in the 1978 order holding the action in abeyance for one year.[3]
*104 As recently as Matter of R. H., 300 N.W.2d 271 (S.D.1981), we stated the standard of review as:
"We have repeatedly held, in a long line of cases, that the trial court's findings of fact cannot be set aside unless they are clearly erroneous and we are, after a review of all the evidence, left with a definite and firm conviction that a mistake has been made."
Matter of R. H., supra, at 273, quoting from Matter of A. M., 292 N.W.2d 103 (S.D.1980). Upon a review of the record we do not find that the trial court's findings are clearly erroneous.
The record discloses that M. N. has not met a majority of the conditions set out in the October 2, 1978, order. First, M. N. has utterly failed to maintain a home for herself, let alone one suitable for her children. During the year of abeyance, she did not remain at one residence for longer than four months. The record indicates that during this time period she resided in Sioux Falls, South Dakota; Bridgeport, Washington; Nicolaus, California; and Chelan, Washington. Even at the time of the December 10, 1979, hearing, M. N. did not possess sufficient facilities in which to house her children; for she was currently residing in a three-room apartment at a motel where she worked. Moreover, M. N. did not present herself for visitations with her children for eight months of this one-year abeyance period. She was unemployed for a substantial amount of the time and when she was employed it was never for any significant length of time. Her contact with Department, as required by the trial court's order, usually consisted of a letter informing Department of her current whereabouts; even that contact was sporadic, with one stretch of twelve weeks in which Department did not have any contact with M. N. whatsoever.
We must in fairness state that M. N. does appear to have curbed her consumption of alcohol; however, the trial court did not base its decision on her usage of alcohol as that is not incorporated into its findings. We hold, in light of the totality of the circumstances and after a careful review of the record, that the findings of the trial court are not clearly erroneous.
All other issues not rendered moot by this opinion are found to be without merit.
Accordingly, the decree of disposition is affirmed.
All the Justices concur.
NOTES
[1] The fathers' parental rights to these children were also terminated; however, they have not appealed.
[2] Judge Anderst indicated at the December 10, 1979, hearing that:

[S]omebody made the observation that that order [of June 6, 1975] was defective because there was no service that had been made on either of the natural fathers and that the order for that reason may be set aside ....
[3] In its findings, the trial court stated:

5. That said [M. N.] could not at the time of the hearing in December, 1979 show the Court with any particularity what she has done with respect to employment or where she has lived for the last fourteen months. That it is evident from the few contacts the Department of Social Services has had during said period, that there was a period of approximately eight months from the date of the hearing in October, 1978 before [M. N.] made herself available in South Dakota to arrange for visitations between herself and her children. That during that eight month period she moved from Sioux Falls, South Dakota to the State of Washington, to California, back to the State of Washington, and back to Sioux Falls, without maintaining regular employment or keeping in contact with the Department of Social Services as required by the Order of October 2, 1978;
6. That during these six months immediately preceding the hearing in December, 1979, [M. N.] did not maintain employment or establish a permanent residence, let alone a residence fit for occupancy by her and her five children.