**In the Matter of L.R., Alleged Dependent and Neglected Child.**

**Nos. 15089, 15139.**

Supreme Court of South Dakota.

Considered on Briefs March 17, 1986.

Decided Oct. 22, 1986.

Janice Godtland, Asst. Atty. Gen., Pierre, for appellee, State of South Dakota; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Douglas E. Kludt of Churchill, Manolis, Freeman & Volesky, Huron, for appellant, L.R.

Jeffrey D. Larson of Bleeker, Boldt & Koch, Woonsocket, for appellant, J.R.

PER CURIAM.

This is a consolidation of two appeals in which the Mother and Father of L.R., a female minor, appeal from a judgment terminating their parental rights. We affirm.

Mother and Father were married in 1979. The child was born prematurely on April 10, 1982. Because neither Mother nor Father responded appropriately to the birth of their daughter, hospital personnel contacted the Department of Social Services. A protective services worker immediately began to assist the family by providing counseling, parental aide, and other forms of assistance.

Between the child's birth and March 1985, the protective services worker visited the household on approximately fifty occasions; her primary relationship was with Mother. She found Mother to be cooperative, and to have the desire to properly care for her daughter. She became increasingly concerned for the child's welfare, however, as it became obvious Mother and Father were verbally and physically abusing each other. Mother expressed concern that she might hurt her daughter when she became upset. Father admitted to the worker that he had rubbed his daughter's vagina and breasts and made attendant off-color remarks. Mother claimed Father had also masturbated in front of their daughter.

In August of 1984, Mother and Father's second child died of sudden infant death syndrome. Due to the stress resulting from this death and continued marital problems, Mother had Father take their daughter to his sister's home fearing for the child's safety after Mother physically assaulted the child. Father's brother-in-law testified that the child's cheek was swollen, red, and had handprints on it. She also had extensive blood blister bruises on her buttocks and the side of one leg. In late February 1985, the brother-in-law stopped at Mother and Father's home. He observed that the child was sobbing and her cheek was swollen. After the brother-in-law's daughter noticed a bruise on the child's forehead and heard Father describe a recent fight where Mother hit Father the sheriff was notified. A social worker and family support worker investigated and assisted the family.

In April 1985, a petition was filed alleging the child to be dependent and neglected as defined under SDCL 26-8-6. The trial judge ordered that Community Counseling Services conduct evaluations of the child and each parent prior to the adjudicatory hearing.

Mother told the counselor that she had been abused by her father, who drank. She related that she had a history of handling anger and stress through assaultive means. The counselor's testing revealed that Mother had an I.Q. of 76, placing her on the borderline of mental retardation. His "working diagnosis" was that Mother suffered from "intermitent explosive personality disorder," meaning she experienced mental confusion due to stress,

showed poor judgment, and had great fluctuations in mood with unpredictable behavioral outbursts. The counselor believed that the child was in jeopardy despite the fact that Mother loved her.

The counselor also tested Father, who, like Mother, had an I.Q. of 76. Father was unable to read or write. He admitted his sexual misconduct towards his daughter but perceived nothing wrong in such behavior. Father also told the counselor that he believed his daughter should be placed in foster care. Father was found to be ambivalent toward his daughter.

The counselor found that the child had not developed enough for testing. However, in observing the child do various tasks, he found her to be at the level of a one and one-half year old, although she was actually three years old. Without prompting, the child volunteered that her mother had hit her in various areas.

■ The trial court correctly applied the clear and convincing evidence standard in both the adjudicatory and dispositional phases. SDCL 26–8–22.10; *People in Interest of L.A.*, 334 N.W.2d 62 (S.D.1983); *People in Interest of S.H.*, 323 N.W.2d 851 (S.D.1982). *See also Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). The standard applied in our review is whether the trial court was clearly erroneous in finding that the evidence supporting termination was clear and convincing. SDCL 15–6–52(a); *People in Interest of H.L.*, 386 N.W.2d 495 (S.D.1986); *In the Matter of S.M.*, 384 N.W.2d 670 (S.D.1986). We do not determine whether we would have made the same findings as the trial court, but whether after examining the entire record we are left with a definite and firm conviction that a mistake has been made. *E.g., S.M., supra,* at 674.

Mother alleges the trial court erred in terminating her parental rights because such action was not the least restrictive alternative available to the court. *See, e.g., id.; People in Interest of C.L.*, 356 N.W.2d

476 (S.D.1984). As a corollary, she urges that certain trial court findings of fact be overturned.

Mother argues that instead of terminating her rights over her daughter, the trial court should have opted for a continued "therapeutic program" for Mother to aid her in conquering her emotional problems and to increase her parenting skills. Mother relies heavily on the opinion of the counselor who testified that Mother had made significant improvements while on such a program in the one-month period between the adjudicative and dispositional hearings.

At the dispositional hearing the counselor testified that Mother's susceptibility towards explosiveness had improved greatly since his initial evaluation of her. He therefore downgraded his classification of her disorder to "mixed personality disturbance." It was his opinion that Mother should continue in her program for a period of six months to one year in order to determine if she would then be able to cope financially, emotionally, and to otherwise provide a suitable environment for the child. He stated that although at the time of the dispositional hearing she was not able to so cope, the improvement she had made since the adjudicative hearing warranted this continued observation. He testified that he believed Mother's separation from Father would help her cope by reducing the stress the marriage had caused her. He also stated that an outpatient program would be available to Mother to help her cope with parenting and other stresses after the inpatient period.

■ The court chose to disregard the counselor's opinion as to Mother's future improvement. It entered a finding of fact that "the testimony of [the counselor] at the dispositional hearing is not p[e]rsuasive or sufficient regarding the future conduct of [Mother]" and that "Mother has chronic control problems which cannot be predicted to decrease even if her marriage is dissolved." * These and similar findings Mother challenges on appeal.

* We take judicial notice that a Decree of Divorce of Mother and Father was entered December 12, 1985. *See* SDCL 19–10–2(2). *See also Nauman v. Nauman*, 336 N.W.2d 662 (S.D.1983) (wherein

We cannot find these trial court findings to be clearly erroneous. The record contains persuasive evidence that Mother was living in an artificial environment while at the Support Center, without the stress of coping on her own, much less the added stress of raising a child; that Mother had a history of abusing the child; had little or no "support network" of family and friends to help her cope; was likely on her best behavior because she knew her acts would affect the disposition of this case; and that earlier therapy was apparently of little help. Furthermore, due regard must be given to the opportunity of the trial court to judge the credibility of the counselor. SDCL 15-6-52(a). The trial court was able, firsthand, to judge the expertise of the counselor. Due to the above facts, it follows that continued therapy was not a viable option, and that the court therefore did not fail to adopt the least restrictive alternative at the dispositional hearing.

■ Mother's counsel argues that Mother's low intelligence requires the state be more patient in awaiting the results of her therapy program. The least restrictive alternative, however, is viewed from the child's perspective and not the parent's. *E.g., H.L., supra,* at 499; *C.L., supra,* at 479. *See also S.M.,* 384 N.W.2d at 675–76 *citing In re N.J.W.,* 273 N.W.2d 134 (S.D. 1978) (best interest of child considered above parent's intellectual shortcomings and insufficient improvement in parenting skills). Furthermore, continued delay places the child's custody and future in continued limbo, when stability and certainty is in her best interest. *People in Interest of P.B.,* 371 N.W.2d 366 (S.D.1985); *People in Interest of J.S.N.,* 371 N.W.2d 361 (S.D.1985).

■ Father also appeals the order terminating his parental rights. However, there is little merit in his contentions. Father has demonstrated himself to be a thoroughly unfit parent. He fails to see the wrong in his previous inappropriate touchings of

the child. He has never held a steady job. Social security is his only source of income. He has refused to pursue efforts to correct his alcohol abuse problem and has generally shown little concern for the child's upbringing.

■ Father also argues that the court failed to exercise dispositional alternatives less restrictive than termination of his parental rights. Father argues his parental rights should have been kept intact; he urges that custody should have been awarded to his mother or sister or to Father with their supervision. The trial court specifically considered these alternatives and found that such a placement was not in the best interests of the child. Again, we cannot say that this finding is clearly erroneous.

Father's sister testified that she did not desire custody of the child because at the time of the dispositional hearing she did not yet know the child well enough. She saw her role as one of aiding the grandmother in bringing up the child, and of possibly taking over for her completely should the grandmother become unable to care for the child.

While the child's grandmother seems to genuinely desire raising the child and apparently has the resources to do so, we are not left with a definite and firm conviction that the trial court's failure to award her custody was mistaken. Leaving the child with her grandmother, despite her assurances to the contrary, would give Father access to the child, which, in light of his past behavior, is not in the child's best interests. *Compare Matter of B.R.B.,* 381 N.W.2d 283 (S.D.1986). Viewed from the child's perspective, leaving the father's parental rights intact and placing custody with his mother was therefore not a viable alternative.

The judgment is affirmed.

DUNN, Retired Justice, for FOSHEIM, J., disqualified.

this court took judicial notice of marriage occurring subsequently to the lower court pro-

ceedings therein).