**In the Matter of N.K. and H.K., Alleged Dependent Children.**

**No. 15203.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 24, 1986.

Decided Sept. 30, 1987.

Rehearing Denied Nov. 2, 1987.

---

Drake A. Titze, Minnehaha County Public Defender, Sioux Falls, for appellants N.K. and H.K.

Donald H. Breit, Sioux Falls, for appellant M.W.

Pamela J. Tiede, Deputy State's Atty., Sioux Falls, and Mark V. Meierhenry, Atty. Gen., Pierre, for appellee State of S.D.

J.A.K., Anacortes, Wash., pro se.

JOHNSON, Circuit Judge.

This is an appeal from a trial court judgment awarding legal custody of N.K. and H.K. to their natural father, J.K. We reverse and remand for a new dispositional hearing.

J.K. (father) and M.W. (mother) were married in December 1972. This was mother's first marriage and father's third marriage. The parties had two daughters, H.K., born September 17, 1975, and N.K., born November 16, 1976. Father and mother were divorced on June 19, 1978.

Father remarried in June 1981; mother married D.W. (stepfather) in January 1979.

The legal custody of H.K. and N.K. has been the subject of litigation for over six years. In September 1979, father was prosecuted for sexual contact with a minor, an 11 year-old babysitter. Although father was acquitted by a jury, his visitation rights to H.K. and N.K. were restricted and, until 1984, visits were supervised by the Department of Social Services. In August 1984, the Department of Social Services investigated allegations that H.K. and N.K. had been sexually abused, either by father or by stepfather or by both. As a result of this investigation, the state's attorney filed a dependency and neglect petition and the court placed temporary custody of both girls with the Department of Social Services.

All parties to the proceedings stipulated that the children were dependent and neglected, and the trial court conducted a five day dispositional hearing. The trial record included extensive testimony by medical and psychological experts and an in camera interview between the court and the girls.

The trial court found that father had a warm and loving relationship with his 18 month old son by his current marriage and that father and his wife provided a suitable environment for children. The court found that a warm relationship existed between father and his daughters and that neither child felt any antipathy toward their father.

The court further found that the children had been the victims of excessive "corporal and related punishment" at the hands of mother and stepfather and that stepfather had sexually abused both of the girls. Finally, the court determined that father had not sexually abused the children and that the allegations of such abuse were not sufficiently corroborated by specific and credible evidence.

The trial court entered its judgment, which placed custody of H.K. and N.K. with father and granted mother specific rights of visitations. The court ordered

continued counseling for father and the girls.[1]

Mother, H.K. and N.K. appeal contending that the trial court's award of custody to father was not supported by clear and convincing evidence and that it was an abuse of discretion.

In reaching its disposition the trial court must "balance the rights of the parent with the best interest of the child and the public." *Interest of S.M.M.*, 349 N.W.2d 63, 64 (S.D.1984); SDCL 26–8–22.11. The best interest of the child must always prevail. *In Re S.M.*, 384 N.W.2d 670 (S.D.1986).

The trial court's findings will not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. SDCL 15–6–52(a). *Matter of S.M., supra; Matter of S.L., H.L. and M.B.*, 349 N.W.2d 428, 432 (S.D.1984). Findings of the trial court will be overturned only when, after review of all the evidence, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Wiggins v. Shewmake*, 374 N.W.2d 111 (S.D.1985).

We cannot say that the trial court was clearly erroneous in finding that stepfather had sexually abused the children and that father had not. Both men denied any sexual misconduct and the court was required to resolve these issues from conflicting evidence.

On the other hand, we find that the trial court's award of custody to father was an abuse of discretion and contrary to the best interests of the children. The children were ages 8 and 9 at the time of the August 1985 dispositional hearing. They had not lived with their father since 1978, when H.K. was two (2) and N.K. was one (1) year-old. Father had a history of disfunctional behavior. Although never actually diagnosed as a pedophile, father had an unusual and disturbing sexual preoccupation with children.[2] When told by the Department of Social Services that they were returning the children to their mother, father said "I'm going to kill [stepfather]." Father was resistant to counseling efforts and antagonistic towards any efforts by the Department of Social Services to supervise the children. When told by another social worker that H.K. did not want to visit him, father told the social worker to physically force the child to visit him.

We do not imply that the trial court should have awarded custody of the children to mother. There was evidence from which the trial court could and did conclude that the children had been sexually abused by stepfather and that mother and stepfather physically abused the children. Although there is considerable evidence of progress made in improving their home environment, the fitness of this home is a matter for the trial court to consider at a new dispositional hearing.

We believe that the trial court unnecessarily restricted itself to a choice between mother and father as a custodial parent. SDCL 26–8–35 provides additional alternatives which should be considered by the trial court at a new dispositional hearing.[3]

---

1. Shortly after entry of judgment, father removed himself and the girls from the state, which precluded any visitation between mother and children and denied the children the benefit of court ordered counseling. A warrant for fathers arrest was issued charging him with violations of SDCL 22–19–9 and 22–19–10.

2. Although father was acquitted of the sexual contact charge, his diary of the events surrounding the incident contains his vivid and disturbing detailed account of the efforts of the 11 year old babysitter to seduce him over a *4–6 week period* at his home.

3. SDCL 26–8–35 provides:
When a child has been adjudicated to be neglected or dependent, the court shall enter a decree of disposition. When the decree does not terminate parental rights, it shall include one or more of the following provisions which the court finds appropriate:
(1) The court may place the child in the legal custody of one or both parents, a guardian, or relative or other suitable person, with or without protective supervision, under such conditions as the court may impose;
(2) The court may place legal custody in the department of social services or a child placement agency for placement in a foster home or other child care facility; or
(3) The court may order that the child be examined or treated by a physician, surgeon, psychiatrist, or psychologist, or that he receive other special care, and may place the

After reviewing the entire record we have a definite and firm conviction that a mistake has been made.

The judgment is reversed and the case is remanded to the circuit court for a new dispositional hearing.

MORGAN and SABERS, JJ., and FOSHEIM, Retired J., concur.

HENDERSON, J., dissents.

JOHNSON, Circuit Judge, sitting for WUEST, C.J., disqualified.

MILLER, J., not having been a member of the court at the time did not participate.

HENDERSON, Justice (dissenting).

Findings of Fact and Conclusions of Law were entered by an able, experienced trial judge who found, essentially, the facts based upon testimony he heard after five days of dispositional hearing. The Conclusions of Law are supported by the Findings of Fact.

Attached to this writing are the trial court's Findings of Fact and Conclusions of Law. Nowhere in the majority opinion is it reflected that these Findings were clearly erroneous. We cannot decide factual issues de novo. *In re D.H.*, 354 N.W.2d 185 (S.D.1984). Yet, the majority reverses; this decision therefore violates SDCL 15–6–52(a) which provides that the trial court's findings of fact will not be set aside by this Court unless they are clearly erroneous. *See also In re T.H. & J.H.*, 396 N.W.2d 145, 148 (S.D.1986).

Majority's footnote number two is an inferred finding-of-sorts, and it appears to be directly contrary to the trial judge's Finding of Fact VIII. We are not the fact finders; we review "on the record." The trial judge accepted psychological evaluations that father was "a normal individual." He totally rejected testimony of one Dr. McGrath which tended to paint father as a pedophiliac. We should not/cannot

child in a hospital or other suitable facility for such purposes.

decide that he is one—thereby substituting our judgment—or infer it.

The trial judge removed these two girls from a home where they were physically and sexually abused, and placed them with a father who has a "warm relationship" with them. *See* Finding of Fact X and IV.

It is noted that the trial judge did, in fact, use an alternative under SDCL 26–8–35 placing legal custody in the father and terminating no parental rights. The trial court structured visitation for the mother, counseling of the children, and supervision by the Department of Social Services; it appears to be a well thought-out decision, grounded in the immediate best interests of the little girls. These girls were interviewed by the trial judge in chambers; he saw fit not to place them with the Department of Social Services. The record contains letters from the girls imploring their counsel not to appeal.* I do not condone removal of these girls from South Dakota when considering Judge Kern's order. However, that matter, as a legal issue, is not before us and must be addressed elsewhere.

I would affirm.

### APPENDIX

STATE OF SOUTH DAKOTA )
                             ) SS
COUNTY OF MINNEHAHA )

In Circuit Court Second Judicial Circuit

In the Matter of N.K. and H.K., Alleged Dependent Children

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter came on regularly before the Circuit Court with the Honorable Paul J. Kern presiding on the 19th day of August, 1985, and continued until concluded on the 23rd day of August, 1985 at the Courthouse in the City of Sioux Falls, Minnehaha County, South Dakota. Pamela Tiede, esquire, appeared on behalf of the State of South Dakota as Deputy States's Attorney,

* A letter from the oldest girl to her lawyer, reflecting an address in the State of Washington, in childlike language, decries attempts by her lawyer to bring her back to South Dakota.

with Rita Haverly, esquire, appearing on behalf on N.K. and H.K., with Don Breit, esquire, appearing on behalf of M.W., the mother of said children, who was also present, and N. Dean Nasser, Jr., esquire, appearing on behalf of the father of said children, namely, J.K., who was also present, and based upon the evidence presented and the arguments of counsel and the Court being fully advised in the premises, the Court does hereby make and enter the following:

## FINDINGS OF FACT

### I.

That the children, H.K., born September 17, 1985, and N.K., born November 16, 1976, the above-named alleged dependent children are the natural children of the respondents, J.K. and M.W.

### II.

That said respondent parents were divorced in Minnehaha County, South Dakota, on the 19th day of June, 1978. That J.K. married his present wife, D.K., on the 6th day of June, 1981, and they have one son, E.K., age approximately 18 months.

### III.

That much evidence was presented on the warmth of the relationship between the K's and their son, E.K., and the fitness of the home as an environment for children, which evidence the Court finds credible and accepts.

### IV.

In addition, much evidence was presented about the warmth of the relationship between H.K. and N.K. and their father, J.K., which evidence the Court finds credible and accepts; further, that the Court has examined the children, face to face, in chambers and has determined from such examination that the children have a warm relationship with their father, and that neither of the children possesses antipathy towards him.

### V.

That the respondent, M.W., became married to D.W., the children's current step-father on the 14th day of January, 1979; further, that the W. home has been fraught with two major catagories of difficulties as regards the children, H.K. and N.K., to wit: excessive corporal and related punishment at the hands of both M.W. and D.W., and sexual abuse at the hands of D.W.

### VI.

That the children repeatedly reported to authorities that D.W. had sexually abused them and discribed [sic] the incidents in a manner the Court deems credible and accepts.

### VII.

That accusations of sexual abuse against J.K. were not corroborated by any evidence the Court deems sufficiently specific and credible to permit a finding that J.K. abused the children, and on the contrary, the Court finds J.K.'s testimony that he did not abuse the children to be credible, and the other testimony which was accusatory towards J.K. not to be credible, and specifically the Court feels that those individuals providing testimony against J.K. in this regard were most probably mistaken and jumped to false conclusions; further that the Court finds that the respondent, M.W., has attempted to make it appear as though J.K. and not D.W. had performed sexual abuse upon the children by attempting to create such evidence by false accusations and by telling the girls, H.K. and N.K. that it was their natural father, J.K., and not their step-father who abused them sexually; further that this conduct on the part of M.W. accounts for some confusion the girls evidenced to social workers and psychologists as to who abused them.

### VIII.

The Court accepts the psychological evaluations which showed J.K. to be a normal individual and rejects the testimony of Dr. McGrath, which tended to paint J.K. as an incurable pedophiliac.

### IX.

That the Court finds that J.K. in his current emotional and mental state is a fit and proper parent for these children.

### X.

The Court finds that the best interests of the children demands that they be taken from the W. home where they were physically and sexually abused, and that custody of these girls, both legal and physical, be transferred to their father, J.K., subject to the restrictions on custody and visitation hereinafter set forth.

### XI.

That the children as a result of the sexual abuse at the hands of D.W. are dependant [sic] children in need of supervision by the Court and the parties stipulated to dependancy [sic] and the evidence shows that there is a factual basis for such finding.

### XII.

That the respondent, J.K. shall report to a Court Service's Officer once per month with his daughters for family guidance.

### XIII.

That the mother, M.W. and shall have visitation rights with the children as follows:

1. She shall have the right to have the children in her home once per month on a weekend, commencing at 5:00 p.m. Friday to 7:00 p.m. Sunday. She shall also have the right to visit the children for four hours on either Saturday or Sunday, during the other three weeks of the month. The Department of Social Services of the State of South Dakota shall place in effect, restrictions on D.W. and M.W. similar to the ones now in effect, designed to ensure the children's safety.

### XIV.

The children, H.K. and N.K., shall continue to receive counseling from a qualified psychiatrist or psychologist that is acceptable to the Court.

### XV.

That it is in the best interests of the children that neither parent shall disparage the other to the children, and that both should cooperate in raising these children subject to the supervision of the Court, and the personnel designated by the Court to supervise the parents and the children, which supervision shall continue until further order of [t]his Court.

Based upon such Findings of Fact, the Court makes the following:

### CONCLUSIONS OF LAW

### I.

That the Court has both personal jurisdiction of the parties and jurisdiction of the subject matter.

### II.

That the children, H.K. and N.K., are dependant [sic] children subject to supervision by this Court.

### III.

That based upon the evidence when taken as a whole, the best interests of the children require that custody, both legal and physical, be transferred to their father, J.K., from their mother, M.W. forthwith, subject to the restrictions upon the respondent, J.K., hereinabove set forth concerning counseling of the dependant [sic] children by a psychiatrist or psychologist acceptable to the Court, and reporting monthly to a Court Services's Officer and subject to the restrictions upon M.W. and D.W. hereinabove set forth and referred to concerning visitation of the children.

LET JUDGMENT ENTER ACCORDINGLY.

Respectfully submitted this 28th day of October, 1985.

BY THE COURT:
/s/ Paul J. Kern
Judge of the Circuit Court