**In the Matter of L.B. and J.B., Dependent and Neglected Children.**

**Nos. 15662, 15663.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 5, 1987.

Decided Dec. 9, 1987.

Janice Godtland, Asst. Atty. Gen., Pierre, for appellee; Roger A. Tellinghuisen, Atty. Gen., Pierre, on the brief.

Scott N. Heidepriem, for appellant mother, Miller.

Keith B. Anderson, for children, Huron.

MILLER, Justice.

This is an appeal from the termination of a father's parental rights.* This court previously upheld the termination of the mother's parental rights. (*Matter of L.B. and J.B.*, 403 N.W.2d 426 (S.D.1987); *Matter of L.B. and J.B.* [Matter of J.V.], 398 N.W.2d 755 (S.D.1986).)

This action deals with two children: L.B., a female born in July 1981; and J.B., a male born in March 1983. The trial court found that father had sexually abused L.B. and that such conduct along with other less serious conduct and deficiencies required the termination of his parental rights over both children.

In recent years there have been a multitude of cases before this court dealing with dependent and neglected children and the termination of their parents' parental rights. As a result, we have created a well-established body of law to guide and govern social workers, mental health professionals, state's attorneys and other members of the bar and the trial bench in handling these most important cases. We continually reiterate that the interests of the children are paramount. SDCL 26–8–36; *People in Interest of T.H.*, 396 N.W.2d 145 (S.D.1986); *In re M.C.*, 391 N.W.2d 674 (S.D.1986); *In re S.M.*, 384 N.W.2d 670 (S.D.1986); *People in Interest of P.B.*, 371 N.W.2d 366 (S.D.1985); *People in Interest of J.S.N.*, 371 N.W.2d 361 (S.D.1985); *People in Interest of C.L.*, 356 N.W.2d 476 (S.D.1984); *People in Interest of S.L.H.*, 342 N.W.2d 672 (S.D.1983); *People in Interest of M.S.M.*, 320 N.W.2d 795 (S.D. 1982). We have further firmly established

that the abuse of one child is relevant to the care a parent will provide to other siblings. *In re K.D.E.*, 87 S.D. 501, 210 N.W.2d 907 (1973); *In re R.Z.F.*, 284 N.W. 2d 879 (S.D.1979).

Here, father's central claim is that the trial court's findings of fact were clearly erroneous. We have continually and consistently held that we will not set aside a trial court's findings unless they are clearly erroneous and unless, after reviewing the evidence, we are left with a firm and definite conviction that a mistake has been made. *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *In re S.D.*, 402 N.W.2d 346 (S.D.1987); *People in Interest of T.H., supra; In re L.R.*, 394 N.W.2d 901 (S.D.1986); *In re S.M., supra; People in Interest of M.W.*, 374 N.W.2d 889 (S.D.1985); *In re A.M.L.*, 371 N.W.2d 358 (S.D.1985); *People in Interest of D.M.*, 367 N.W.2d 769 (S.D.1985); *People in Interest of M.J.B.*, 364 N.W.2d 921 (S.D.1985); *In re D.H.*, 354 N.W.2d 185 (S.D.1984); *People in Interest of S.L.H., supra; In re S.S.*, 334 N.W.2d 59 (S.D.1983); *In re S.A.H.*, 314 N.W.2d 316 (S.D.1982); *In re D.A.B.*, 313 N.W.2d 787 (S.D.1981); *People in Interest of T.L.J.*, 303 N.W.2d 800 (S.D. 1981); *In re R.N.*, 303 N.W.2d 102 (S.D. 1981); *People in Interest of P.M.*, 299 N.W.2d 803 (S.D.1980).

The facts in this case are unique to these parties and their sad circumstances. No useful purpose would be served by reiterating all of the sordid details in this writing. The trial court chose to believe the testimony of social workers and mental health professionals and to disregard the testimony of the father and mother. That is the appropriate function and role of the trial court as a finder of fact in litigation such as this. SDCL 15–6–52(a); *In re N.K. & H.K.*, 414 N.W.2d 5 (S.D.1987); *S.D., supra; T.H., supra; P.M., supra.*

We have thoroughly reviewed and scrutinized the transcripts of the testimony and are not left with a definite and firm conviction that a mistake has been made. *In re K.C.*, 414 N.W.2d 616 (S.D.1987);

* Appellant's counsel here was not his counsel at trial.

T.H., *supra; M.W., supra; In re A.M.*, 292 N.W.2d 103 (S.D.1980). Not only was the trial court not clearly erroneous in its findings of fact, there was clear and convincing evidence supporting both the finding of abuse and the termination of father's parental rights. *K.C., supra; T.H., supra; M.W., supra; A.M., supra.*

Affirmed.

WUEST, C.J., and MORGAN and SABERS, JJ., concur.

HENDERSON, J., dissents.

HENDERSON, Justice (dissenting).

Although I do not quarrel with the general expressions of precedent, as established by this Court, in the majority opinion, I take exception to the application because of the factual background of this case.

There can be nothing more tragic, serious, or damning to the life of any man than to have him portrayed as a human being who would sexually molest a small child.

In this case, it is undisputed that the mother of these two children coached the little girl involved to fabricate stories that her father had molested her. At trial, the mother was informed of the penalty for perjury and confessed before the court that her report to the Department of Social Services reflecting that the little girl had been abused by her father was false and given out of spite towards the father.* Mother testified that she thought this was a way to prohibit the father from visiting the children in the presence of her new husband. Mother confessed on the stand, during the proceedings below, that she had actually proceeded to train this little girl to point to her breasts and vaginal area when asked questions about them and to reflect that this was where she had been abused. Again, this was all fabrication on the part of the mother and taught to this little girl so that the little girl could indict and accuse

her father of a heinous crime and an act against nature and God.

Acting upon the complaint of the mother, a social worker in the Department of Social Services undertook an investigation. This social worker then presented anatomical dolls to the little girl and asked her to point. The little girl pointed exactly as her mother had coached her to do. At this point, I mention that there was never any physical evidence to suggest that this little girl had been molested. It is shocking to read that a case can be manufactured and presented against a father in such a fashion as this. Furthermore, the social worker, Deborah Kuhler, testified that although she believed the little girl had been sexually abused, she was not certain the real father had abused her. The little girl apparently interwove claimed sexual abuse upon her body as having been wrought (after coaching) by her father, mother, and mother's new husband, the latter being referred to as "Daddy" also. In other words, the social worker herself was unable to express with any deep conviction or clarity that it was actually the true father who abused the little girl.

From the State's brief, we glean that the State is totally aware of the fact that the mother "lied when she told the social worker that father had molested L.B. [the little girl]." The State also calls our attention to the fact that when the anatomical rag dolls were presented to the little girl, the little girl did not identify whether it was Daddy S. or Daddy D. Deborah Kuhler, mentioned above, had thirteen one-hour sessions between February 12 and June 3, 1986, before arriving at her conclusion. This strikes me as being a very careful, slow, and thorough process, but I am overwhelmed by the fact that the social worker/counselor was unable to arrive at a conclusion concerning the particular Daddy to whom the little girl was referring.

The above written words by this author suggest that an unreliability of evidence

---

* Mother further testified, under oath, that she taught the little girl to tell other people that her father had touched her private parts. A maternal uncle and grandmother both testified that they witnessed the mother rehearsing with the little girl to say that her father touched her and point to her body.

attains. We announced in *In re S.H.*, 323 N.W.2d 851 (S.D.1982), following *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), that the proper burden of proof is the clear and convincing standard. Clear and convincing evidence is that which is so clear, direct, weighty, and convincing so as to allow the trier of fact to reach a clear conviction of the precise facts at issue without hesitancy as to their truth. *In re S.L.H.*, 342 N.W.2d 672, 675 (S.D. 1983); *In re L.A.*, 334 N.W.2d 62, 65 (S.D. 1983); *In re J.W.W.*, 334 N.W.2d 513, 516–17 (S.D.1983). When a mother coaches a child out of spite to say these terrible things about a father, and goes into great detail in teaching the child to accuse the father, and then admits this in sworn testimony, has there been the proper burden of proof under the clear and convincing standard? I think not. The social worker seemed greatly impressed with her conclusion that the little girl had been sexually abused by her real father in that the little girl used very explicit language pertaining to sexual activities. This does not all gravitate against the real father, in my opinion, because the mother was successfully attempting to keep the two children away from the real father and they were in the home of the mother and the new "Daddy." The trial court expressly indicated that the mother's testimony lacked credibility; this is hard to understand, when she is under oath, and admits to such a grievous flow of conduct. Her actual teachings to this little girl were corroborated by independent witnesses. The maternal uncle and grandmother testified that they both witnessed the mother rehearsing the little girl to say that the father indecently touched her and then to point to her body. So the mother's testimony, concerning her coaching this little girl, did not lack credibility as the trial court found.

The clearly erroneous rule is applicable to the finding that the State has met the proper burden of proof. *In re T.H.*, 396 N.W.2d 145, 148 (S.D.1986); *In re S.M.*, 384 N.W.2d 670 (S.D.1986); *In re D.H.*, 354 N.W.2d 185 (S.D.1984); *In re S.S.*, 334 N.W.2d 59 (S.D.1983). As I mentioned above, that burden of proof is the clear and convincing standard. To rehearse a little child, again and again, as happened in this factual scenario, to exhibit and state that a parent debauched her body, so that the authorities will take up the cause for the instructor, is abhorrent to my sense of justice. To make plans to indict and destroy a man (or a woman) by manufacturing and fabricating (admitted in the State's brief) is a defilement of that which is in the best interests of a child. To the contrary, it is conduct of a deviate to manipulate a small, innocent child, destroying that child's peace of mind and mental well-being. I cannot countenance the conduct of this mother nor can I support the Department of Social Services who took up her complaint and cause and pressed on, regardless. It is to be noted that the child was never called as a witness. Evidence of sexual molestation was all by hearsay. *Cf. State v. Foell*, 416 N.W.2d 45 (S.D.1987). I cannot ratify a decision by the circuit court which now states that the mother's testimony is not credible when it is corroborated by independent testimony. The trial court's findings of fact cannot be set aside unless clearly erroneous and we are, after a review of the evidence, left with a definite and firm conviction that a mistake has been made. *In re A.M.*, 292 N.W.2d 103, 105 (S.D.1980); *In re V.D.D.*, 278 N.W.2d 194 (S.D.1979); *Cunningham v. Yankton Clinic*, 262 N.W.2d 508 (S.D.1978); *Schutterle v. Schutterle*, 260 N.W.2d 341 (S.D. 1977). Such a mistake has been made here. This case should be reversed for the reason that the sexual abuse by the real father was not proven by clear and convincing evidence.